CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 21 2008

JOHN F. CORCORAN, CLERK
BY:
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JIMMIE L. REAVES,<br><br>    Plaintiff,<br><br>v.<br><br>ROANOKE REDEVELOPMENT AND<br>HOUSING AUTHORITY,<br><br>and<br><br>BILL SIZEMORE<br><br>and<br><br>BRIGGETTE HARRIS,<br><br>    Defendants. | Civil Action No. 7:08-cv-00484<br><br>**MEMORANDUM OPINION**<br><br>By: Hon. James C. Turk<br><br>Senior United States District Judge |

This matter is presently before the court on Defendants Roanoke Redevelopment and Housing Authority ("RRHA"), Bill Sizemore, and Briggette Harris' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Docket No. 6). Plaintiff Jimmie Reaves initially brought this action seeking damages arising from a landlord-tenant relationship with the RRHA. Following the filing of Defendants' Motion to Dismiss, Reaves filed various responsive documents (Docket No.'s 11-13), and the court heard oral arguments on October 2, 2008. Both parties presented materials outside of the pleadings for consideration, and thus the court will treat Defendants' motion as one for summary judgment. Fed. R. Civ. P. 12(d) (2008). For the reasons that follow, the court grants Defendants' Motion for Summary Judgment.

## I.

Jimmie Lee Reaves is a pro se plaintiff who previously resided at Hunt Manor, an apartment community owned and operated by the RRHA. Reaves first began living at Hunt Manor in December, 2002, when he signed a one-year lease for a single-bedroom apartment (811 Hunt Avenue Apt 3). On or about June 12, 2003, the RRHA mailed Reaves a "30-Day Moving Notice" concerning some renovation work being done on or near Reaves' apartment. The Moving Notice stated that because the Hunt Manor was replacing the exterior stairs, upstairs porches and downstairs porch slabs, Reaves would be forced to vacate his apartment for safety reasons. The Moving Notice also stated that the RRHA would provide Reaves with a new apartment and would pay moving expenses including any charges necessary for the transferring of cable and phone connections.

Having received no response from Reaves for nearly two weeks, on or about June 27, 2003, the RRHA sent a second moving notification letter to Reaves. In this subsequent letter, the RRHA notified Reaves that he would be relocated to a two-bedroom apartment (809 Hunt Ave. Apt. 1). The letter also stated that the move was scheduled for July 11, 2003, and it was necessary for Reaves to complete certain paperwork to enable the RRHA to secure any and all moving services that would be required. Again, Reaves failed to respond.

Finally, on or about July 3, 2003, Defendant Bill Sizemore approached Reaves in person to discuss the impending move. According to Reaves' pleadings, Sizemore promised during this discussion that: (1) the RRHA would reimburse Reaves for any out-of-pocket expenses; (2) Reaves would be moved back into his original apartment at the completion of the renovations; and (3) while living in the two-bedroom replacement

apartment, the RRHA would not increase Reaves' monthly rent. At this time, Sizemore also required Reaves to sign a new lease for the replacement apartment.

After executing the lease and receiving keys for the two-bedroom apartment, Reaves inspected his new home for the first time. According to Reaves, the apartment was littered with building supplies like wall putty buckets, boxes of unused tiles, and containers of glue. Reaves also contends that the utilities were disconnected, paint was peeling from the walls, and the ceilings were on the verge of collapsing. Reaves cleaned up the apartment to the best of his abilities, however, and chose to report only the problem with the utilities to Sizemore, who took immediate steps to ensure that the utilities were turned on. Reaves then moved into the apartment.

Beginning two-weeks later, Reaves received monthly rental invoices indicating that he owed $349.00 to the RRHA for the rent on the two-bedroom apartment. Reaves received these notices every month for the duration of his residence at the two-bedroom apartment. Despite these notices, Reaves refused to pay the $349.00 owed and remitted only $263.00 per month to the RRHA. Reaves justified this amount based on Sizemore's purported promise that Reaves' rent would not increase as a result of the move.

By December of 2003, Reaves owed the RRHA more than $600.00 in unpaid rent. The RRHA eventually took legal action in the form of an eviction. In response, Reaves initiated a lawsuit in the Virginia State Courts alleging various claims against the RRHA and its employee, Bill Sizemore. Among his allegations, Reaves claimed that the RRHA breached its contractual duties with Reaves by "tricking" him into signing a new lease agreement, by illegally moving him into a larger apartment with higher rent, and by failing to reimburse him for moving expenses. Reaves further alleged that the two-

3

bedroom apartment was inhabitable and infested with asbestos. Finally, Reaves claimed that the actions of the RRHA (Bill Sizemore and Briggitt Harris in particular) were racially-motivated and caused him damages in the sum of $15,000.

On June 4, 2008, Reaves' State Court claims were tried in Virginia General District Court.[1] When Reaves completed his presentation of evidence and rested his case, the State Court granted Defendants' Motion to Strike on the grounds that Reaves failed to offer sufficient evidence to support any of his claims. The State Court accordingly entered judgment for the Defendants and dismissed the action. Reaves did not appeal this decision, but rather he filed the federal action in question here, claiming: (1) breach of contract, (2) failure to provide an adequate rental unit, and (3) emotional distress and/or other injury based on alleged exposure to asbestos. Reaves now seeks damages in the sum of $41,499.00.

## II.

According to Rule 12(d) of the Federal Rules of Civil Procedure, if matters outside the pleadings are presented to and not excluded by the court in a motion to dismiss, the motion must be treated as one for summary judgment. Fed. R. Civ. Pro. 12(d) (2008)[2]; see also Wilson-Cook Medical, Inc. v. Wilson, 942 F.2d 247, 252 (4th Cir. 1991) (converting a motion to dismiss into a motion for summary judgment applies only to a motion made pursuant to Rule 12(b)(6)). Before a court may properly convert a

---

[1] The case was tried in the Roanoke City General District Court, Case No. GV08005757.

[2] Federal Rule of Civil Procedure 12(d) states as follows:

> Result of Presenting Matters Outside the Pleadings. If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. Pro. 12(d) (2008).

motion to dismiss to a motion for summary judgment, however, all parties must be given reasonable notice and the opportunity to present any additional material made pertinent by the conversion. Fed. R. Civ. Pro. 12(d) (2008); see also Gay v. Wall, 761 F.2d 175, 177 (4th Cir. 1985) (quoting Johnson v. RAC Corp., 491 F.2d 510, 513 (4th Cir.1974)) (The term "reasonable opportunity" requires that all parties be given "'some indication by the court . . . that it is treating the 12(b)(6) motion as a motion for summary judgment,' with the consequent right in the opposing party to file counter affidavits or pursue reasonable discovery."). The necessity of this notice stems from a recognition that, although the two motions are functionally equivalent in their potential result, they are not the same in practice. Aldahonda-Rivera v. Parke Davis & Co., 882 F.2d 590, 591 (1st Cir. 1989). Notably, while Rule 12(b)(6) motions to dismiss are decided solely on the pleadings, a motion for summary judgment may rely on additional outside evidence. Id. Sufficient notice thus ensures that genuine issues of material fact will be brought to the trial court's attention by affording the nonmoving party an opportunity to "marshal its resources" and rebut the motion for summary judgment with every factual and legal argument available. Denis v. Liberty Mut. Ins. Co., 791 F.2d 846, 850 (11th Cir. 1986).

Where one of the litigants proceeds pro se, a number of courts have found that more explicit notice is required before a motion to dismiss can be converted into a motion for summary judgment. See e.g., Davis v. Zahradnick, 600 F.2d 458, 460 (4th Cir. 1979) (error where district court failed to explain to pro se plaintiff that the conversion of a motion to dismiss into a motion for summary judgment entitled plaintiff to file counter affidavits or other responsive material). This is particularly important where a pro se litigant's failure to file counter-affidavits or other responsive documents might result in

5

the court's entry of summary judgment against him. Id., see also Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (notice must be sufficiently clear to be understood by a pro se litigant and calculated to apprise him of what is required under Rule 56).

In the instant case, both reasonable and explicit notice of the court's intention to convert Defendants' Motion to Dismiss to a Motion for Summary Judgment was given to Reaves before and during the hearing on October 2, 2008. The Clerks Office mailed Reaves a Roseboro Notice on September 18, 2008 stating that Plaintiff had twenty (20) days to submit "any further counter-affidavits or other relevant evidence contradicting, explaining or avoiding defendants' evidence." The Notice further explained that "if documents or affidavits outside the pleadings are submitted by either party, any remaining motion(s) to dismiss under Rule 12(b)(6) of the Federal Rules of Federal Civil Procedure may be considered as motion(s) for summary judgment under Rule 56 of the Federal Rules of Federal Civil Procedure." At the commencement of the hearing on October 2, 2008, the court explicitly stated its intention to treat the Motion to Dismiss as one for Summary Judgment. The court justified this decision on the basis that both parties had filed—and intended to argue—matters outside the pleadings, and the court gave both sides an opportunity to object to the conversion. Neither party did so.

The court, therefore, will hereafter treat Defendants' Motion to Dismiss as a Motion for Summary Judgment. The court must view the facts, and inferences to be drawn from those facts, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Nguyen v. CNA Corp., 44 F.3d 234, 236-7 (4th Cir. 1995). Summary judgment is only proper where

there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## III.

Defendants offer four grounds to support a granting of summary judgment in the instant case: (1) res judicata; (2) collateral estoppel; (3) Younger abstention; and (4) insufficient factual pleading. Because the court finds that the first argument is dispositive to the Motion for Summary Judgment in its entirety, the court addresses only that issue.

According to the Full Faith and Credit Clause of the U.S. Constitution and its implementing statute, 28 U.S.C. § 1738, federal courts must recognize and give effect to valid judgments rendered by other courts in the United States. U.S. Const. art IV, § 1. As part of this duty, federal courts must recognize the claim- and issue-preclusive effects, if any, of valid state court judgments. Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 293 (2005). In a non-diversity action, where the issues involved in a related prior judgment were issues of state law, it is state law, not federal law, which determines the applicability of these preclusion doctrines. See Davenport v. North Carolina Dept. of Transp., 3 F.3d 89, 93 (4th Cir. 1993) (applying state res judicata law in regards to 42 U.S.C. § 1983 claims brought in federal court).

The Virginia state courts have characterized res judicata as a judicially-created doctrine that "precludes relitigation of the same cause of action, or any part thereof, which could have been litigated between the same parties and their privies." Davis v. Marshall Homes, Inc., 265 Va. 159, 164, 576 S.E.2d 504, 506 (Va. 2003) (quoting Smith v. Ware, 244 Va. 374, 376, 421 S.E.2d 444, 445 (1992)). The Supreme Court of Virginia articulated the doctrine more clearly as follows:

7

> When the second suit is between the same parties as the first, and on the same cause of action, the judgment in the former is conclusive of the latter, not only as to every question which was decided, but also as to every other matter which the parties might have litigated and had determined, within the issues as they were made or tendered by the pleadings, or as incident to or essentially connected with the subject matter of the litigation, whether the same, as a matter of fact, were or were not considered. As to such matters a new suit on the same cause of action cannot be maintained between the same parties.

Lofton Ridge, LLC v. Norfolk Southern Ry. Co., 268 Va. 377, 381, 601 S.E.2d 648, 650 (Va. 2004) (quoting Kemp v. Miller, Kemp v. Miller, 166 Va. 661, 674-75, 186 S.E. 99, 103-04 (Va. 1936)). Rule 1:6 of the Rules of the Supreme Court of Virginia similarly states:

> A party whose claim for relief arising from identified conduct, a transaction, or an occurrence, is decided on the merits by a final judgment, shall be forever barred from prosecuting any second or subsequent civil action against the same opposing party or parties on any claim or cause of action that arises from that same conduct, transaction or occurrence, whether or not the legal theory or rights asserted in the second or subsequent action were raised in the prior lawsuit, and regardless of the legal elements or the evidence upon which any claims in the prior proceeding depended, or the particular remedies sought.

Va. Sup. Ct. R. 1:6(a). Based on these definitions, a litigant seeking to assert res judicata as a defense under Virginia law must establish four major elements: (1) identity of the remedy sought; (2) identity of the cause of action; (3) identity of the parties; and (4) identity of the quality of the persons for or against whom the claim is made. Davis v. Marshall Homes, 265 Va. at 164, 576 S.E.2d at 506 (citing State Water Control Bd. v. Smithfield Foods, Inc., 261 Va. 209, 214, 542 S.E.2d 766, 769 (2001); Balbir Brar Assoc., Inc. v. Consolidated Trading and Serv. Corp., 252 Va. 341, 346, 477 S.E.2d 743, 746 (1996); Wright v. Castles, 232 Va. 218, 222, 349 S.E.2d 125, 128 (1986)). The proponent of the defense must also establish that the judgment in the former action is
8

final and rendered on the merits by a court of competent jurisdiction. Simmons v. Commonwealth, 252 Va. 118, 120, 475 S.E.2d 806, 807 (1996).

Applying these principles to the instant case, the court finds that all the requisite elements of res judicata are satisfied. Reaves seeks to assert federal claims for the same remedies, under the same legal theories, against the same parties, and arising from the same set of operative facts, as he did previously in the State Court case. The only discrepancy between the two complaints is the inclusion of Defendant Briggitt Harris, who was not named as a defendant in State Court. The court finds this difference to be legally insignificant, as Defendant Harris is in privity with the RRHA for purposes of res judicata. See Whitley v. Commonwealth, 260 Va. 482, 491, 538 S.E.2d 296, 301-02 (2000) (the Commonwealth of Virginia and its employees are in privity for purposes of res judicata); see also Nero v. Ferris, 222 Va. 807, 813, 284 S.E.2d 828, 832 (1981) (an employee is in privity with his employer under Virginia law where the employer's liability was derivative based on the employee's acts).

There is also clear evidence that the prior State Court judgment was made on the merits. A judgment is "on the merits" under Virginia law if both parties have "presented all their evidence and the court . . . properly understood the facts and correctly applied the law to the facts." Highsmith v. Com., 25 Va.App. 434, 440, 489 S.E.2d 239, 241-42 (Va. Ct. App. 1997). In the instant case, the State Court transcript shows that Reaves raised and litigated the underlying conduct of the federal claims and that the State Court judge understood the evidence—or lack thereof—when dismissing the case.

Finally, because Reaves failed to exercise his right to appeal within ten days of the State Court judgment, the judgment is final and eligible for preclusive effect. See Va.

9
Case 7:08-cv-00484-JCT Document 17 Filed 10/21/08 Page 9 of 10 Pageid#: 226

Code § 16.1-106 (providing for an appeal of right from the General District Court to the Circuit Court if made within ten days of a judgment); TransDulles Center, Inc. v. Sharma, 252 Va. 20, 23, 472 S.E.2d 274, 276 (1996) (recognizing the preclusive effect of a final judgment of a general district court).

The court thus finds that res judicata prohibits Reaves from asserting any claims in federal court that were previously litigated, or could have been litigated, in his prior State Court action. Va. Sup. Ct. R. 1.6(a); see also Smith v. Holland, 124 Va. 663, 667, 98 S.E. 676 (1919) (Va. 1919) ("The effect of a final decree is not only to conclude the parties as to every question actually raised and decided, but as to every claim which properly belonged to the subject of litigation, and which the parties, by the exercise of reasonable diligence, might have raised at the time."). Because each and every claim in Reaves' Complaint arises wholly from the same conduct, transaction or occurrence as was at issue in the prior State Court judgment, the federal action is barred in its entirety and the court must dismiss it accordingly.

## IV.

For the reasons set forth above, it is hereby **ORDERED** that Defendants' Motion for Summary Judgment (Docket No. 6) is **GRANTED**. The Clerk of Court is directed to send a copy of this Memorandum Opinion and accompanying Final Order to Plaintiff and counsel of record for Defendants.

**ENTER**: This _21st_ day of October, 2008.

_James C. Turk_
Hon. James C. Turk
Senior United States District Judge